IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GEORGIA JONES, Administrator of the
Estate of ARLENE DUKE, THE
DECEDENT, deceased,

                       Plaintiff,
v.                                                   Civil Action No. 2:18cv517

VIRGINIA DEPARTMENT OF
CORRECTIONS, *et al.*,

                       Defendant.

## OPINION & ORDER

This matter comes to the Court on a Motion to Dismiss under rule 12(b)(6), filed by several Defendants. Doc. 17. The parties have agreed that a hearing is not necessary as to the Motions to Dismiss. See Doc. 40. The Court agrees that no hearing is necessary; accordingly, the Court will decide this motion on the papers.

The instant motion to dismiss raised numerous issues, most of which have been disposed of by agreement or Order. The motion requested dismissal of claims against the VDOC and FCCW as they are not section 1983 "persons." Doc. 18 at 2. The claims against those two (2) defendants were voluntarily dismissed. Doc. 34. The motion requested dismissal of official capacity claims against Defendants Clarke, Schilling, and Brown Williams as they are not section 1983 "persons." Doc. 18 at 5. That request was addressed by an Order granting a motion for voluntary dismiss such claims, Mot. to Vol. Dismiss doc. 35. Order, doc. 50. All that is left for this Court to decide is whether it should dismiss the individual-capacity claims against Clarke, Schilling, and Brown

Williams on grounds that the Complaint fails to state a claim that they acted with "deliberate indifference." Doc. 18 at 2-5.

For reasons discussed herein, the Court **DENIES** the balance of the motion.

## I. BACKGROUND[1]

This case concerns the incarceration and death of Arlene Duke ("Decedent"). Decedent's mother, Georgia Jones, brings this action as Decedent's estate representative. Compl. ¶ 4. Decedent was incarcerated in 2014 at the FCCW, which is a facility of the VDOC. Id. ¶¶ 1, 6. Decedent died due to serious medical complications while in custody on September 30, 2016. Id. ¶ 6.

Defendant Harold Clarke ("Clarke") is the Director of the VDOC, Defendant Frederick Schilling ("Schilling") is the Director of Health Services of the VDOC, and Defendant Tammy Brown Williams ("Brown Williams")[2] was the Warden of FCCW at the relevant times of this action. Id. ¶¶ 10-12. These Defendants move to dismiss the section 1983 claims against them.

Defendant Armor ("Armor") is a private corporation which contracts with VDOC to provide medical services and treatment to inmates. Id. ¶¶ 15-16. Prior to this lawsuit, the VDOC was a defendant in a lawsuit concerning its allegedly inadequate medical care of FCCW inmates. Id. ¶ 14; Scott v. Clarke, Civ. Action No. 3:12-CV-36 (W.D. Va. 2014), before the Honorable Judge Norman Moon. The adequacy of Armor's services has been the subject of much litigation. On November 1, 2015, the VDOC executed a renewed with Armor for its services. Compl. ¶ 44.

---

[1] In considering a motion to dismiss, "[the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citations omitted). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

[2] The Complaint identifies Brown Williams as Tammy Brown or Brown. She is now known by her name Tammy Williams. To avoid confusion, this Memorandum identifies her as Brown Williams.

2

The Scott v. Clarke litigation ended in Settlement Agreement under which the defendants promised to improve the medical care. Id. ¶ 29. In the months leading to Decedent's death, two (2) years after that Settlement Agreement, one doctor noted "I see no evidence of progress in the critical areas of clinical and administrative leadership and staffing." Id. ¶ 34.

On June 18, 2014, Decedent was incarcerated at FCCW. Id. ¶ 75. At her initial medical assessment, Decedent informed the FCCW nurse that she had numerous health problems, including congestive heart failure, diabetes, and hypertension. Id. ¶ 76. The Complaint outlines a long list of allegations of inadequate attention and treatment of Decedent's growing health problems while in custody, including months-long delays in drawing labs, ignoring results indicating kidney disease, refusal to allow Decedent to see emergency medical staff and specialists, delay in attention to symptoms allegedly resulting in infection of Decedent's dialysis port catheter, and alleged denials of Decedent's request to clean herself and her laundry causing Decedent to live in unsanitary conditions. Id. ¶¶ 79-119.

The Complaint alleges several instances of Decedent submitting complaints and notarized letters to prison staff including "Medical Director at FCCW." Id. ¶¶ 119-134. The Complaint alleges that in the months leading to, and the day of, Decedent's death, Decedent's complaints and those her roommate, as well as observed symptoms, went either unaddressed or inadequately addressed. Id. ¶¶ 136-165. The personnel who responded to Decedent's coding were allegedly inadequately trained. Id. ¶ 166.

The Complaint further alleges that from January 2016 to the date of Decedent's death a staff doctor submitted quarterly reports to "VDOC officials" cataloguing the "systemic deficiencies in healthcare at FCCW in great detail." Id. ¶ 32.

3

On September 28, 2018, Plaintiff filed this action against numerous defendants, including VDOC; FCCW; and Clarke, Schilling, and Brown Williams in their individual and official capacities.

## II. MOTION TO DISMISS

In a prison conditions, section 1983 case, a defendant is liable for the plaintiff's injuries when he acts with "deliberate indifference," which requires that a defendant be subjectively aware of a risk and disregards it, similar to criminal recklessness. Farmer v. Brennan, 511 U.S. 825, 837, 839-40 (1994). The dispute here boils down to the breadth of the word "risk" and whether Plaintiff adequately pleaded such facts. Defendants argue that "deliberate indifference" requires that the official be specifically aware of the plaintiff and her medical needs. Doc. 18 at 3. Plaintiff argues that the law only requires that she plead that the official was aware of a substantial risk of harm, not necessarily that the official knew of her and her specific medical needs. Doc. 28 at 5.

### A. LEGAL STANDARD

*i. Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint [or counterclaim] in the light most favorable to the plaintiff [or counterclaim plaintiff].") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir. 1993)). A complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (observing that the court may consider a document attached to a motion to dismiss "that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity.").

*ii. Supervisory and Prison Conditions Cases*

Plaintiff brings claims against these Defendants under a section 1983, supervisory liability theory under the Eighth Amendment's cruel and unusual punishment clause. Compl. ¶ 3. In order to succeed on such a claim, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
>
> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (quoting Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994)); see also Scott v. Clarke, 2012 WL 6151967, at *8 (W.D. Va. Dec. 11, 2012) (applying this test in a similar case). Defendants' motion raises an issue as to part (2) of this test – that the supervisors themselves acted with deliberate indifference. Doc. 18 at 2.

A supervisory section 1983 defendant cannot be held liable on respondeat superior grounds. Iqbal, 556 U.S. at 676 (collecting authorities). Rather, to sustain a supervisory action against a section 1983 defendant, the evidence must show that the supervisor-defendant himself violated the Constitution. Id. The factors to show such a violation vary depending on the constitutional provision at issue. Id.

A prison official unconstitutionally deprives a prisoner of adequate medical care under the Eighth Amendment when the prison official acts with "deliberate indifference" to their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.") (internal citations omitted). Deliberate

indifference requires proof of subjective recklessness, i.e., more than mere negligence. Farmer, U.S. at 839-40 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment.").

B.   **FACTUAL ALLEGATIONS**[3]

Plaintiff pleaded that Decedent was incarcerated at FCCW on June 18, 2014, Compl. ¶ 75, and that in the early weeks of her incarceration, FCCW staff conducted medical tests on Plaintiff. Id. ¶¶ 78-82.

Plaintiff alleges that these three (3) Defendants "had knowledge of the many problems with medical care of inmates at FCCW at least as early as 2014," when the above-referenced compliance reports by the doctor and the contempt action was filed against VDOC staff. Id. ¶ 42.

Plaintiff does not plead that Clarke, Schilling, or Brown Williams knew of Plaintiff specifically or that Plaintiff had any particular health needs. Plaintiff does make numerous allegations that the Defendants were aware of Armor's failure to train, supervise, or screen its employees and that Armor was not providing adequate care within the prison, but Plaintiff does not plead that Defendants had specific knowledge of Armor's care of Plaintiff.

As to Clarke, Plaintiff pleaded that Clarke was aware of:

> (1) Armor's failure to train, supervise, control or otherwise screen its employees, agents and subcontractors; (2) the performance by such Armor employees, agents and subcontractors of duties outside their areas of training and expertise; and, (3) deliberately indifferent training or supervision of such employees, agents and subcontractors[,]

id. ¶ 208; that he:

> [4] was aware of the problems and conditions existing in FCCW, including preventable deaths and injuries that resulted from poor monitoring, improper medical screening, improper medical assessment, and inadequate medical care of inmates, including failing to send critically ill inmates for specialty services without any medically justified delay[,]

---

[3] See supra n.1.

id. ¶ 209; (5) that he failed to remedy those problems, despite his notice, id. ¶ 210; and that he:

> [6] maintained a system of review of the treatment and care of inmates, which has failed to identify and/or correct the improper treatment and neglect by his officers and/or Armor and its employees, agents and subcontractors, who fail to properly classify, monitor, treat, refer, assess, medicate, and protect inmates. This review system fails to provide appropriate discipline, supervision, dismissal and/or retraining, to the extent that it has become a de facto policy and custom of Clarke to tolerate and permit the improper and inadequate treatment and neglect of those who suffer from serious medical conditions, such as the decedent[,]

id. ¶ 212.

As to Schilling, Plaintiff pleaded that he was aware of:

> [1] the problems and conditions existing in FCCW, including preventable deaths and injuries that resulted from poor monitoring, improper medical screening, improper medical assessment, and inadequate medical care of inmates, including failing to send critically ill inmates for specialty services without any medically justified delay,

id. ¶ 221; (2) that he failed to remedy those problems, despite his notice, id. ¶ 222; that he:

> [3] maintained a system of review of the treatment and care of inmates, which has failed to identify and/or correct the improper treatment and neglect by his officers and/or Armor and its employees, agents and subcontractors, who fail to properly classify, monitor, treat, refer, assess, medicate, protect, and house detainees. This review system fails to provide appropriate discipline, supervision, dismissal and/or retraining, to the extent that it has become a de facto policy and custom of Schilling to tolerate and permit the improper treatment and neglect of inmates suffering from serious medical conditions, such as the decedent,

id. ¶ 224.

As to Brown Williams, Plaintiff pleaded:

> (1) that Armor's medical staff has failed to properly assess and treat inmates' serious medical needs and failed to have inmates referred for specialty services, including the decedent, when it became medically necessary;
>
> (2) that there were preventable poor health outcomes of inmates and deaths that have resulted from improper treatment and neglect;
>
> (3) that investigations into incidents of inmate neglect and poor medical outcomes, including death, were incompetent and failed to address the misconduct of Armor employees and/or correction officers;

8

(4) that Armor has failed to correct the problems identified in the Settlement Agreement entered into in the Contempt Action;

(5) that Armor has a custom or policy of not referring inmates for specialty services to receive the proper level of medical care that they require;

(6) that Armor has a custom or policy that leaves individuals without needed medication or treatment;

(7) that Armor's employees have a custom of providing inadequate medical care and acting with deliberate indifference to the serious medical needs of inmates which results in death and preventable poor health outcomes;

(9) that it was evident that Armor had developed a long history of providing unconstitutional and inadequate healthcare across the country and required robust supervision by VDOC. Defendant Brown was and is deliberately indifferent to the unreasonable risk to which they exposed inmates at FCCW, including the decedent, by failing to remedy any of the above problems with the foreseeable result being the creation of circumstances that resulted in the neglect and death of the decedent and harm to other inmates,

id. ¶ 234; that she:

[10] she failed to train, supervise, control or otherwise screen employees of FCCW and Armor and its employees, agents, or subcontractors named in this complaint, as well as other Armor employees for lack of training and/or skill or other characteristics, making said medical providers and employees unfit to perform their duties at FCCW,

id. ¶ 236; that she was:

[11] aware of the problems and conditions existing at FCCW, including preventable deaths and injuries that resulted from poor monitoring, improper medical screening, improper medical assessment, inadequate medical care of inmates, including failing to send critically ill inmates for specialty services or further evaluation without any medically unjustified delay,

id. ¶ 238; that she:

[12] was deliberately indifferent to and knowingly disregarded the serious medical needs and safety of the inmates, including the decedent, by failing to remedy these problems, even though she had notice of them,

id. ¶ 239; that she:

[13] failed to provide training and supervision of the on-duty medical personnel or maintain a system of review of the treatment and care of inmates, which has failed to identify and/or correct the improper treatment and neglect by employees of FCCW and/or Armor and Armor's employees who fail to properly classify, monitor, treat, refer, assess, medicate, and protect inmates. This review system fails to provide appropriate discipline, sanctions, supervision, dismissal and/or retraining, to the extent that it has become a de facto policy and custom of Brown to tolerate and permit the improper treatment and neglect of those who suffer from serious medical conditions, such as the decedent.

## C. DISCUSSION

Defendants argue that the "deliberate indifference" standard can only be satisfied when a plaintiff pleads facts suggesting that the defendant had "actual knowledge or awareness" of the plaintiff and his illness. Doc. 18 at 3.

Defendants cite Miltier v. Beorn, a pre-Farmer case, for holding that the Eighth Amendment requires a plaintiff to plead at least one of the following: "'(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations.'" Doc. 18 at 2 (quoting Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)). Defendants argue that because the Complaint fails to allege that they were actually aware of Plaintiff and her medical needs, the Complaint cannot fit within any of those categories. Id. at 3-5.

Plaintiff responds by arguing that the "deliberate indifference" test does not require alleging actual knowledge of an inmate and her medical condition. Doc. 28 at 5-6. To support this, she cites to Farmer itself. Plaintiff cites several passages of Farmer where the Court explained that the Eighth Amendment question is whether a defendant exposed an inmate to a substantial risk of harm. Id. Plaintiff also claims that the Complaint pleads sufficient facts to support a reasonable inference that that defendants were aware of the allegedly unconstitutionally inadequate

care being given to inmates. Doc. 28 at 3-4. Plaintiffs go on to argue that Defendants had a "custom or policy of tolerating and permitting" such inadequate care. Id. Plaintiff subsequently called the Court's attention to Adams v. NaphCare, Inc. In that case, a section 1983 plaintiff brought several claims, including one for supervisory liability. 244 F. Supp. 2d 546. 550 (E.D. Va. 2017). There, the court found that a defendant's role on a supervisory committee along with plaintiff's obvious medical conditions were sufficient to support an inference that defendants had knowledge of plaintiff's needs. Id.

The Fourth Circuit articulated a state supervisor's duty as, "subordinate was engaged in conduct that posed a pervasive and unreasonable <u>risk of constitutional injury to citizens</u> like the plaintiff." Wilkins, 751 F.3d at 226 (emphasis added). As Judge Moon held, in a case involving similar conduct by the same defendants (except Defendant Brown Williams), when a complaint pleads that facts that, if true, raise an inference that supervisory defendants had actual or constructive knowledge "that [the plaintiff] and similarly situated prisoners were suffering and would continue to suffer violations of their Eighth Amendment right to constitutionally adequate medical care as a result of the pervasive shortcomings in the medical care" it has pleaded sufficient facts to survive a 12(b)(6) motion. Scott, 2012 WL 651967, at * 8. There,

> Plaintiffs allege[d] that Defendants [] had direct personal knowledge of the . . . pervasive nature of the deficient medical care rendered to prisoners at FCCW . . . . Plaintiffs have also alleged facts to show the VDOC Defendants' "continued inaction in the face of documented widespread abuses," which "provides an independent basis for finding . . . deliberate[ ] indifferen[ce] or acquiesce[nce] in the constitutionally offensive conduct of [ ] subordinates.

Id. Knowledge of the plaintiffs and their specific, personal needs was not necessary to pleading a claim. See id. Actual knowledge of widespread, medical inadequacies, and knowledge that prisoners such as plaintiff would be exposed to those inadequacies, is sufficient.

11

Moreover, the language of Farmer itself supports this interpretation. Farmer, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault."), 844 ("Because, however, prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so.").

Here, the Complaint alleges that there were pervasive medical inadequacies throughout the prison facilities and that Defendants were aware of the problems. The Complaint alleges that, notwithstanding this knowledge, Defendants failed to take appropriate action to remedy the inadequate medical care. Indeed, Plaintiffs allege that, despite knowing of Amor's deficient medical care, Defendants renewed its contract to perform medical services for the facilities. If the entire medical system is inadequate, then the prisoners, including Decedent, would be exposed to that serious risk. If Defendants had knowledge of those inadequacies, then Defendants had knowledge of that risk. The Complaint pleads facts to support those premises. This shows that the Defendants were aware of a "substantial risk to inmate safety." Farmer, 511 U.S. at 843.

Furthermore, Plaintiff pleaded that Defendants Clarke and Schilling maintained a system of review of the medical services at the facilities. The Adams case is helpful to the analysis of this point. In Adams, the Magistrate Judge explained that the plaintiff pleaded, "[defendant's] role on the quality assurance committee charged her with actually knowing the care the inmate population, including [plaintiff] received." Adams, 244 F. Supp. 3d at 550. The District Judge overruled objections to that decision, noting that the facts pleaded raised a reasonable inference that

defendant "knew of [plaintiff's] serious medical needs." Id. Much like that case, two (2) Defendants here "maintained a system of review" of the medical services given to the inmate population. Thus, Defendants Clarke and Schilling are charged with such knowledge by virtue of their service on that committee. In addition to that service, Plaintiff pleaded numerous types of information that Defendants Clarke and Schilling would know. Taking those allegations as true, as this Court must at this stage, Plaintiff has properly pleaded a claim against Defendants Clarke and Schilling. The Complaint alleges that despite knowing of the deficiencies in medical care, Defendant Brown Williams failed to conduct medical reviews or train or supervise the staff. Thus, adequate claims have been pleaded as to all of the Defendants.

Furthermore, the Court notes that Plaintiff has pleaded that the various acts or omissions which show deliberate indifference, on the part of Defendants Clarke, Schilling, and Brown Williams, were causes to Decedent's injury. Compl. ¶¶ 213-215, 218 (Clarke); 225-227, 228, 230, 231 (Schilling); 239, 241-243, 246, 247 (Brown Williams).

Based on the foregoing, the Court **FINDS** that the Plaintiff has adequately pleaded her causes of action against these Defendants. Accordingly, the Court **DENIES** the balance of the motion on the papers.

The Clerk is **REQUESTED** to distribute a copy of this Opinion and Order to counsel of record.

It is **SO ORDERED**.

Norfolk, Virginia
May 9, 2019

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNTIED STATES DISTRICT JUDGE

13